UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARCIA EDWARDS,

                                    Plaintiff,                         **23-CV-6942 (VF)**

                        -against-                                      **OPINION AND ORDER**

KRISTI NOEM,
Secretary, U.S. Department of Homeland Security,

                                    Defendant.
------------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge.**

Plaintiff Marcia Edwards ("Edwards" or "Plaintiff") brings claims for gender and race

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-e, *et*

*seq.* ("Title VII"), against Secretary of the United States Department of Homeland Security

("DHS") Kristi Noem ("Noem" or "Defendant"). ECF No. 1. Currently pending before the Court

is Defendant's motion for summary judgment. ECF No. 52. For the reasons set forth below, the

motion for summary judgment is **GRANTED**.

**BACKGROUND**

I.      Factual Background[1]

On March 18, 2019, Plaintiff entered duty as a Deportation Officer at Enforcement and

Removal Operations for Immigration and Customs Enforcement ("ICE"). ECF No. 53 at ¶ 1. She

---

[1] Unless otherwise noted, the facts recounted herein reflect admissible evidence in the record and the undisputed, material facts contained in the parties' Local Civil Rule 56.1 Statements of Facts. See ECF Nos. 53, 62; In re Gen. Motors LLC Ignition Switch Litig., 154 F. Supp. 3d 30, 32 (S.D.N.Y. 2015) (explaining that admissible evidence can be considered at summary judgment). Where a party denies a fact because it "simply seeks to add its own 'spin' on the fact or otherwise dispute the inferences from the stated fact" but does not otherwise cite to admissible evidence refuting the fact (see ECF No. 62 at ¶¶ 22-23), those facts have been deemed admitted. See Johnson v. L'Oreal USA, No. 18-CV-9786 (JPC), 2021 WL 4482167, at *1 n.1 (S.D.N.Y. Sept. 30, 2021), aff'd by, No. 21-2914, 2023 WL 2637456 (2d Cir. Mar. 27,

had no prior federal government or law enforcement experience. Id. at ¶ 30. On April 9, 2019,

Plaintiff began the ICE Basic Immigration Enforcement Training Program at the Federal Law

Enforcement Training Center in Glynco, Georgia. Id. at ¶ 2. The same day, in connection with

the commencement of training, Plaintiff signed three documents: (1) an acknowledgment that

she received Chapter 46.3 of the Detention and Removal Operations ("DRO") Policy and

Procedure Manual, (2) the "U.S. Immigration and Customs Enforcement Employment

Agreement," and (3) the "Training Agreement" for the Enforcement and Removal Operations

Basic Immigration Enforcement Training Program. Id. at ¶¶ 4-6.

Chapter 46.3 of the DRO Policy and Procedure Manual, entitled "Completion of

Mandatory Training," states that "[s]uccessful completion of Basic Immigration Law

Enforcement Training is mandatory . . . for all Deportation Officer occupations (herein

referenced as DRO Officers)." Id. at ¶ 3. Chapter 46.3 further provides that "[a]ny student who

fails to meet . . . conduct standards of the Basic Immigration Law Enforcement Training Program

is ineligible for employment as a DRO Officer. Both non-status and status employees who do not

successfully complete Basic Immigration Law Enforcement Training will be terminated from

training without graduating and returned to their official duty station. Such employees are

---

2023). There are various facts in the record which are not disputed, but which neither party has included in their respective Rule 56.1 Statement of Undisputed Facts. These facts have been included here, because the Court may rely on any admissible "evidence in the record" on a motion for summary judgment. See In re Fosamax Prods. Liab. Litig., 707 F.3d 189, 193 (2d Cir. 2013) (quoting Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012)) ("In ruling on a motion for summary judgment, a district court 'may rely on any material that would be admissible at a trial.'").

ineligible to return to the DRO Academy for training unless they re-apply and are selected under a different vacancy announcement." Id. at ¶ 12.

The U.S. Immigration and Customs Enforcement Employment Agreement states that "[i]t is hereby agreed between the parties that the Employee, as a condition precedent to retention in the position, will satisfactorily complete the required course of mandatory basic training for the specified position." Id. at ¶ 5.

The Training Agreement states that the signatory "understand[s] that a mandatory component of continued employment is the successful completion of [Enforcement and Removal Operations] Basic Immigration Enforcement Training Program" and that they "must successfully complete all aspects of [the training program] as a condition of [ ] employment." Id. at ¶ 6. The agreement further states that the signatory "ha[s] read and reviewed the contents of the ICE Enforcement and Removal Operations (ERO) Basic Training Student Handbook," "understand[s] that if [they] have any questions about the contents of the handbook[ ], it is [their] responsibility to ask questions for clarification," and "agree[s] to adhere to and abide by the policies, procedures, and requirements contained within this handbook." Id. at ¶ 10.

Per the Student Handbook, students in the training program can be removed from training for a variety of reasons, including violations of the honor code, excessive tardiness, or failure to pass examinations. Id. at ¶ 7. The handbook also states that "[m]isconduct on or off the [Federal Law Enforcement Training Center], at any time is ground for dismissal from training either by the [Federal Law Enforcement Training Center] or the ICE Academy," and the handbook

provides examples of misconduct, including "ANY arrest on or off the [Federal Law Enforcement Training Center] campus." Id. at ¶¶ 8-9 (capitalization in original).

The Standard Operating Procedures Regarding the Removal of Students from Basic Training Programs provides that "[a] student who fails to complete an [Enforcement and Removal Operations] Basic Training Program due to misconduct or performance reasons will be removed from the training program." Id. at ¶ 11. The same manual/handbook states that "[t]he decision to propose or sustain an adverse action based on a student's failure to complete an [Enforcement and Removal Operations] Basic Training Program lies solely with the [Enforcement and Removal Operations] [Training Division] Deputy Assistant Director and/or Unit Chief." Id. at ¶ 14.

An ICE policy entitled "Criminal Charges Against Students" states that "where there is reason to believe a student faces unresolved criminal charges, he or she should be terminated from the training program[.] Following the termination of training, the employee should then return to his or her duty station until the criminal charges and any related personnel actions have been resolved." Id. at ¶ 13.

On July 9, 2019, while still a student in ICE's Basic Immigration Enforcement Training Program, Plaintiff was arrested by the Richmond Hill Police Department for speeding and reckless driving, because she was driving at a speed of 114 miles per hour in a 70-miles-per-hour zone. Id. at ¶ 15. Following her arrest, Plaintiff contacted her class coordinator, Lauren Posavetz ("Posavetz"). Id. at ¶ 16. Posavetz asked Plaintiff to meet with her and Robert Todd Franks

("Franks"), the ICE Academy Section Chief. Id. At the meeting, Plaintiff informed Posavetz and Franks that she had been arrested for speeding and reckless driving. Id. at ¶ 17.

Franks subsequently recommended to his direct supervisor Jack Bonner ("Bonner"), the ICE Academy Unit Chief, that Plaintiff be terminated from training. Id. at ¶ 19. That same day, Bonner completed a Student Departure Report and accompanying memorandum advising Plaintiff that her "attendance in the ICE Basic Immigration Enforcement Training Program BIETP-1905 is being terminated due to being arrested by the Richmond Hill Police Department for Speeding, GA code: 40-6-181 (36-45 Miles Over) 114 in a 70 mph zone and Reckless Driving GA code: 40-6-390." Id. at ¶ 20. The memorandum further stated that Plaintiff's termination from training was effective as of July 9, 2019, and directed her to return to her official duty station in New York on July 12, 2019. Id.; ECF No. 57-10 at 2.

On October 8, 2019, the Deputy Assistant Director for ICE's Enforcement and Removal Operations Training Division, Anthony Putnam ("Putnam"), sent Plaintiff a letter notifying her that her employment was terminated. ECF No. 53 at ¶ 22. The letter informed Plaintiff that she was terminated because of her "failure to meet a condition of employment based upon misconduct." Id. at ¶ 22. The letter noted that the ICE Student Handbook had placed Plaintiff "on notice" that she could be removed or dismissed "from training at any time" because of "misconduct—on or off" the Federal Law Enforcement Training Center. Id. Additionally, the letter observed that Plaintiff had been "placed on notice that as a Deportation Officer," she was "required to successfully complete" the training program. Id. The letter further noted that Plaintiff's attendance in the training program "was terminated" because of "misconduct,"— namely, the arrest on July 9, 2019 for "driving more than 40 MPH over the speed limit"—and that conduct "directly conflicts with the expectations required of a Deportation Officer." Id. at ¶

5

23. Finally, the letter stated that successful completion of the training program was "a condition of employment as a Deportation Officer." Id.

Plaintiff was disciplined by the Enforcement and Removal Operations Training Division, not the New York field office. Id. at ¶ 32. Plaintiff and Putnam have never met, and Putnam was unaware of Plaintiff's race at the time he terminated her employment. Id. at ¶¶ 24-25. Beyond the use of female pronouns when referring to Plaintiff, Plaintiff's gender was not discussed during the process of her termination from training or employment. Id. at ¶¶ 21, 26; ECF No. 55 at ¶ 13; ECF No. 56 at ¶ 8; ECF No. 57-14 at 45[2] (Plaintiff affirmed that "[o]n the date that [she] w[as] terminated from training," neither her race nor gender was "discussed in any way."). Likewise, Plaintiff's race was not discussed during the process of her termination from training or employment. ECF No. 53 at ¶¶ 21, 26; ECF No. 55 at ¶ 13; ECF No. 56 at ¶ 8; ECF No. 57-14 at 45.

Jeffrey Kmiecik ("Kmiecik") is a male ICE deportation officer.[3] ECF No. 53 at ¶ 27; ECF No. 57-14 at 65-66, 79-82; ECF No. 57-16 at 9-21. When Kmiecik began training, he had prior federal government experience, including at the Transportation Security Administration and the Bureau of Prisons, and had been a New York City police officer. ECF No. 53 at ¶ 30. Kmiecik was arrested for suspicion of driving under the influence while working in Arizona as an ICE deportation officer on a temporary assignment. Id. at ¶ 29. Although Kmiecik was working in Arizona at the time of his arrest, he was based in the New York field office. ECF No. 53 at ¶ 29. Following his arrest, Kmiecik was disciplined by officials in the New York field

---

[2] The page numbers referenced for citations to ECF are to the electronically generated pagination in those documents, including for any citations to deposition transcripts.

[3] Supra note 1.

office. Id. at ¶ 31. Kmiecik was not terminated from his employment with ICE.[4] Id. at ¶ 27; ECF No. 57-14 at 80-81; ECF No. 57-16 at 14-21.

II.      Procedural History

Plaintiff commenced this action on August 7, 2023, against then-Secretary of DHS Alejandro Mayorkas. ECF No. 1. Plaintiff filed an amended complaint on September 12, 2023. ECF No. 6. Plaintiff filed a second amended complaint on December 1, 2023, alleging gender and race discrimination in violation of Title VII. ECF No. 19 at ¶¶ 17-20. The second amended complaint specifically alleges that Defendant "subjected [Plaintiff] to disparate treatment based on gender and race, in that they terminated her (based on charges she was ultimately determined to be not guilty of committing) but did not equally discipline her similarly situated white male colleague." Id. at ¶ 16.

On July 31, 2025, Defendant filed a motion for summary judgment. ECF No. 52. Plaintiff filed an opposition brief on September 23, 2025 (ECF No. 60), and Defendant filed a reply brief in further support of the motion on November 26, 2025 (ECF No. 65).

**DISCUSSION**

I.      Legal Standards

*A. Summary Judgment*

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage . . . is carefully limited to discerning whether there are any genuine issues

---

[4] Supra note 1.

of material fact to be tried, not to deciding them." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of demonstrating an entitlement to judgment as a matter of law and identifying the matter or matters that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323; see also Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).

A fact is material when it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation marks omitted). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008) (noting that the Court must view all facts "in the light most favorable" to the non-moving party). However, a court is not required to draw any inference that is "blatantly contradicted by the record, so that no reasonable jury could believe it." Scott v. Harris, 550 U.S. 372, 380 (2007).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo, 536 F.3d at 145. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact

8

by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); see also

Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). For a genuine dispute regarding a material

fact to warrant a jury trial, there must be sufficient evidence supporting the claimed factual

dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial."

Anderson, 477 U.S. at 249 (internal quotation marks and citation omitted). "When no rational

jury could find in favor of the nonmoving party because the evidence to support its case is so

slight, there is no genuine issue of material fact and a grant of summary judgment is proper."

Gallo, 22 F.3d at 1224.

B. *Discrimination Claims Under Title VII*

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge

any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). Where a plaintiff alleges

employment discrimination in violation of Title VII, courts utilize the burden-shifting framework

set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[5] Martin v. MTA Bridges

& Tunnels, 610 F. Supp. 2d 238, 248 (S.D.N.Y. 2009).

To establish a prima facie claim of discrimination under Title VII, the plaintiff "must

show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held;

(3) [s]he suffered an adverse employment action; and (4) that the adverse employment action

---

[5] If Plaintiff had direct evidence of discrimination, then the McDonnell Douglas framework would be unnecessary. See Porter v. Dartmouth-Hitchcock Med. Ctr., 92 F.4th 129, 149 (2d Cir. 2024) ("The McDonnell Douglas test is *inapplicable* where the plaintiff presents direct evidence of discrimination, *e.g.,* that the employer's motivation was discriminatory on its face.") (internal quotation marks and citation omitted) (emphasis in original).

9

occurred under circumstances giving rise to an inference of discriminatory intent." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (quoting Holcomb, 521 F.3d at 138). The burden of making this showing is de minimis. See Dais v. Lane Bryant, Inc., 168 F. Supp. 2d 62, 71 (S.D.N.Y. 2001) (citing Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994)); see also Abdu-Brisson, 239 F.3d at 467 (explaining that the requirement of establishing a prima facie case is "neither onerous nor intended to be rigid, mechanized or ritualistic") (internal quotation marks and citations omitted); Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (noting the "minimal" burden at the prima facie stage) (citation omitted).

"In determining whether the plaintiff has met the de minimis initial burden of showing circumstances giving rise to an inference of discrimination"—the fourth prong of the prima facie case—the court considers whether the "proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204 (2d Cir. 1995) (internal quotation marks and citation omitted). A plaintiff may establish an inference of discriminatory intent by showing that she was treated differently than others similarly situated. See Abdu-Brisson, 239 F.3d at 467-68. In addition to showing disparate treatment, an inference of discriminatory intent may also be drawn from other circumstances, such as "invidious comments about others in the employee's protected group," "more favorable treatment of employees not in the protected group," "the sequence of events leading to the plaintiff's discharge," or the "employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position." Id. at 468 (quoting Chambers, 43 F.3d at 37).

If a plaintiff establishes a prima facie case, a presumption of discrimination is created and "the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory

reason for the adverse employment action or termination." <u>Farias v. Instructional Sys., Inc.</u>, 259 F.3d 91, 98 (2d Cir. 2001); <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. However, the defendant "need not persuade the court that it was actually motivated by the proffered reason." <u>Delaney v. Bank of Am. Corp.</u>, 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation marks and citation omitted). Instead, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." <u>Id.</u> (internal quotation marks and citation omitted). If the defendant succeeds at step two of the <u>McDonnell Douglas</u> framework by articulating a legitimate, nondiscriminatory reason for the plaintiff's termination, the presumption of discrimination is rebutted. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507, 509-11 (1993).

At this point, the burden "shifts back to the plaintiff to provide admissible evidence showing that the defendant's proffered reason was a pretext for discrimination." <u>Grant v. Cont'l Cas. Co.</u>, No. 13-CV-5675 (AT), 2015 WL 1499724, at *6 (S.D.N.Y. Mar. 30, 2015) (citation omitted); <u>see also</u> <u>Holcomb</u>, 521 F.3d at 138 (explaining that even if prima facie case is rebutted, plaintiff "may still prevail by showing . . . that the employer's determination was in fact the result" of discrimination). Otherwise stated, to withstand summary judgment, "the plaintiff must produce . . . sufficient evidence to support a rational finding that the legitimate nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." <u>Grant</u>, 2015 WL 1499724, at *6 (internal quotation marks and citation omitted); <u>see also</u> <u>Holt v. KMI-Continental, Inc.</u>, 95 F.3d 123, 129 (2d Cir. 1996).

"Despite the elaborate process set up in <u>McDonnell Douglas</u>, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and

11

skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." Diagne v. New York Life Ins. Co., No. 09-CV-5157 (GBD) (GWG), 2010 WL 5625829, at *8 (S.D.N.Y. Dec. 8, 2010), adopted by, 2011 WL 204905 (S.D.N.Y. Jan. 21, 2011), aff'd by, 472 F. App'x 56 (2d Cir. 2012); see Graves v. Finch Pruyn & Co., 457 F.3d 181, 188 (2d Cir. 2006) (declining to resolve dispute regarding prima facie case of age discrimination because plaintiff had not "pointed to any record evidence to dispute [defendant's] legitimate reason . . . for the alleged adverse employment action"); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (declining to decide whether prima facie case was established because defendant had "put forth legitimate, nondiscriminatory reasons for [plaintiff's] termination, and [plaintiff] ha[d] failed as a matter of law to proffer evidence of pretext sufficient to go to a trier of fact"); Sattar v. Johnson, 129 F. Supp. 3d 123, 138 (S.D.N.Y. 2015), aff'd by, 669 F. App'x 1 (2d Cir. 2016) (collecting cases); see also Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 n.1 (2d Cir. 2002) (explaining that in some instances, assessment of a plaintiff's prima facie case and his evidence of pretext "tend to collapse as a practical matter under the McDonnell Douglas framework").

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." Holcomb, 521 F.3d at 137. Because of the "elusive nature of intentional discrimination, plaintiffs must often rely on bits and pieces of information to support an inference of discrimination." Banks v. General Motors, LLC, 81 F.4th 242, 259 (2d Cir. 2023) (internal quotation marks and citations omitted). "The resulting 'mosaic of intentional discrimination' may be sufficient to show discrimination." Johnson v. Rockland Cnty. BOCES, No. 21-CV-3375 (VB), 2025 WL 2042267, at *4 (S.D.N.Y. July 21, 2025) (quoting id.).

II.    Gender and Race Discrimination Claims Under Title VII

Beginning with the rationale for Plaintiff's termination, Defendant has offered a legitimate, nondiscriminatory reason for terminating her employment: Plaintiff was arrested for speeding and reckless driving, her participation in the training program ended because of that arrest, and her employment was subsequently terminated because she failed to complete the mandatory training program. See ECF No. 54 at 6. To support this rationale, Defendant points to the ICE Basic Student Handbook and Chapter 46.3 of the DRO Policy and Procedure Manual, both of which Plaintiff received. Plaintiff signed documents memorializing receipt and acknowledgement of these policies. See ECF No. 57-3 at 2 (acknowledging receipt of policy stated in Chapter 46.3 of the DRO Policy and Procedure Manual); ECF No. 57-4 at 2 (acknowledging that "the Employee, as a condition precedent to retention in the position [of deportation officer], will satisfactorily complete the required course of mandatory basic training for the specified position"); ECF No. 57-5 at 2 ("I understand that I must successfully complete all aspects of [Enforcement and Removal Operations Basic Immigration Enforcement Training Program] as a condition of my employment.").

First, the Handbook states that "[m]isconduct on or off the [Federal Law Enforcement Training Center], at any time is ground for dismissal from training," and "ANY arrest on or off" the campus is an example of such misconduct. ECF No. 57-6 at §§ 3.1, 4.2 (capitalization in original); see also ECF No. 57-7 at 2 ("A student who fails to complete an [Enforcement and Removal Operations] Basic Training Program due to misconduct or performance reasons will be removed from the training program."). Second, Chapter 46.3 of the Manual makes clear that successful completion of the training program is a mandatory condition of employment as a deportation officer. ECF No. 54 at 7.

13

In the face of a legitimate, nondiscriminatory reason for her termination, Plaintiff has the burden of coming forth with sufficient evidence from which a trier of fact could conclude that Defendant's stated reason was pretextual. As explained below, Plaintiff has failed to meet that burden and therefore summary judgment for Defendant is appropriate.

As an initial matter, Plaintiff has provided no direct evidence of discriminatory animus. It is undisputed that the letter notifying Plaintiff of her termination from employment was signed by Putnam, not Bonner. ECF No. 62 at ¶ 22; see ECF No. 57-15 at 5 (Plaintiff's termination letter bearing Putnam's signature). Putnam also possessed the authority to terminate Plaintiff. He was the Deputy Assistant Director for ICE's Enforcement and Removal Operations Training Division, and the duties and responsibilities of a Deputy Assistant Director involve administering the Enforcement and Removal Operations Training Division, which encompasses the ICE Academy at Glynco, where Plaintiff was enrolled in training. ECF No. 56 at ¶¶ 1-2, 9. Further, the "authority to discipline students [h]as [been] vested in the [Enforcement and Removal Operations] Training Division" since 2018. Id. at ¶ 10. The parties do not dispute that Plaintiff and Putnam have never met and that Putnam was unaware of Plaintiff's race at the time he terminated her employment. ECF No. 62 at ¶¶ 24-25. There is also no evidence in the record of any statements, comments, remarks or other conduct by Putnam that would suggest he acted out of discriminatory animus towards Plaintiff's race or gender.

In her deposition, Plaintiff testified that she "believe[d]" Bonner "influenced" the decision to terminate her employment. ECF No. 57-14 at 72. Plaintiff, however, points to no evidence to support her belief that Bonner "influenced" Putnam's termination decision, aside from the allegation that someone at the New York field office showed Plaintiff an e-mail containing Bonner's signature that indicated that "someone at the academy" was going to make

14

the decision regarding Plaintiff's employment status. Id. But even if there was evidence of such influence, Plaintiff points to no evidence of discriminatory animus by Bonner, such as statements or other conduct that would suggest that Bonner acted out of animus towards Plaintiff's race or gender.

As evidence of pretext, Plaintiff points to (1) Bonner's "discriminatory animus," in the form of "treat[ing] male and female probationary employee[s] differently, showing favoritism to male employees and negatively treating female ones" and making "disrespectful comments about women of color that he did not make towards other trainees"; (2) the disparate treatment of "similarly situated male colleagues," including Deportation Officer Kmiecik; and (3) Defendant's "fail[ure] to follow its own procedures." ECF No. 60 at 9, 12-15. As explained below, none of these contentions is sufficient to raise a genuine issue of material fact as to whether Defendant's rationale for Plaintiff's termination was pretextual.

Beginning with Bonner's alleged discriminatory animus, Plaintiff testified in her deposition that she "fe[lt]" Bonner "looked down on [her]." ECF No. 57-14 at 70. But Plaintiff's feeling, which is unsupported by any evidence of discriminatory comments by Bonner directed at Plaintiff or even another female employee, is insufficient to establish an inference of discrimination. See Yu v. N.Y. State Unified Court Sys. Office of Court Admin., No. 11-CV-3226 (JMF), 2013 WL 3490780, at *5, 8 (S.D.N.Y. July 12, 2013) (granting summary judgment on discrimination claims where plaintiff relied on fact that she "felt" she was discriminated against because of her race and pointed to no other evidence); Walker v. City of New York, No. 11-CV-2941 (KPF), 2014 WL 1244778, at *9 (S.D.N.Y. Mar. 26, 2014) (noting that plaintiff's "'feeling' of being discriminated against cannot carry the day . . . because Plaintiff has failed to introduce any evidence to support these allegations"); Bobb v. Potter, No. 04-CV-283 (FB) (LB),

2007 WL 1300975, at *3 (E.D.N.Y. May 3, 2007) (concluding that plaintiff's "gut feeling" that his supervisor's "treatment of him was based on race [was] not sufficient to create an inference of discrimination"); see also Famoso v. Marshalls of MA, Inc., No. 12-CV-4863 (DLI) (VVP), 2015 WL 5793308, at *17 (E.D.N.Y. Sept. 30, 2015) (quoting Burrell v. Bentsen, No. 91-CV-2654 (KMW) (NRB), 1993 WL 535076, at *8 (S.D.N.Y. Dec. 21, 1993)) ("It is well established that '. . . statements by non-decisionmakers, and statements by decisionmakers unrelated to the decisional process are not by themselves sufficient to satisfy [a] plaintiff's burden of proving pretext.'").

Plaintiff also states that Bonner made "disrespectful comments about women of color that he did not make towards other trainees." ECF No. 60 at 9, 14-15. Plaintiff provides only one example of such a comment. Plaintiff points to an instance involving a Black female Air Force veteran in "her second time at the academy" who "was off by maybe a couple of seconds and she was getting ready to fail out at the academy . . . [and] [i]n front of everyone [Bonner] said, 'well, we knew she was going to do that. I don't know why she showed up here.'"[6] ECF No. 57-14 at 72-73. Plaintiff's "understanding" of the comment "was that it was because [the trainee] was [B]lack." Id. at 73. On its face, however, the comment is race and gender neutral. And generally, "such facially neutral comments and actions do not give rise to an inference of discrimination." See Maragh v. Roosevelt Island Operating Corp., No. 16-CV-7530 (JMF), 2021 WL 3501238, at *7 (S.D.N.Y. Aug. 5, 2021), aff'd by, No. 21-2129, 2022 WL 14199384 (2d Cir. Oct. 25, 2022) (internal quotation marks, citation, and alterations omitted); Sloan v. United Techs. Corp., 596 F. App'x 35, 36 (2d Cir. 2015) (concluding that "no rational finder of fact could find that plaintiff was discharged as a result of racial discrimination" where "[t]he stray remarks cited by plaintiff

_____

[6] Neither party's Rule 56.1 Statement includes a fact about Plaintiff's race. Based on the arguments made in Plaintiff's brief and her deposition testimony, the Court assumes she is Black.

were either facially race neutral or too removed from plaintiff's discharge to support an inference

of discriminatory causation"); Kamrowski v. Morrison Mgmt. Specialist, No. 05-CV-9234

(KMK), 2010 WL 3932354, at *14 (S.D.N.Y. Sept. 29, 2010) ("The 'fat ass' and 'dumb as a

door knob' comments, though certainly rude, are gender neutral statements that do not indicate

gender animus.").

Additionally, Plaintiff testified that women in the academy are generally "treated

differently from the males" and she added that "the interactions are very different . . . [t]he tone,

the physical interactions are all different between males and females."[7] ECF No. 57-14 at 70.

She stated that "the actual verbiage towards women was inappropriate." Id. at 71. But Plaintiff

provides no examples of the "verbiage" she claims was inappropriate, and nor does she explain

how the "physical interactions" were different between male and female trainees. These vague

and conclusory allegations without more do not raise a factual dispute as to pretext. See

Holcomb, 521 F.3d at 137 ("Even in the discrimination context . . . a plaintiff must provide more

than conclusory allegations to resist a motion for summary judgment."); Zito v. Fried, Frank,

Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 397 (S.D.N.Y. 2012) (granting summary

judgment for employer where plaintiff's "allegations [we]re speculative, cited to and based on

her own testimony, and d[id] not provide any evidence that the elimination of her position . . .

was a pretext of gender discrimination").

Next, Plaintiff points to the disparate treatment of purportedly similarly situated male

employees, including Deportation Officer Kmiecik. The law is clear that "[a] plaintiff may

support an inference of . . . discrimination by demonstrating that similarly situated employees

---

[7] Plaintiff testified that this behavior included Bonner and "others" but Plaintiff never names any "other" individuals. ECF No. 57-14 at 70. Plaintiff's brief describes only Bonner as treating the men and women at the ICE Academy differently. See ECF No. 60 at 9, 14.

outside [her] protected class were treated more favorably, but in order to make such a showing, the plaintiff must compare [her]self to employees who *are similarly situated in all material respects*." Lugo v. Le Pain Quotidien, No. 13-CV-6450 (JMF), 2015 WL 1808558, at *6 (S.D.N.Y. Apr. 13, 2015), aff'd by, 654 F. App'x 7 (2d Cir. 2016) (internal quotation marks and citation omitted, cleaned up) (emphasis in original). Importantly, "[e]mployees are not similarly situated merely because their conduct might be analogized. Rather, in order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." Belgrave v. Pena, No. 98-CV-2517 (DAB) (HBP), 2000 WL 1290592, at *11 (S.D.N.Y. Sept. 13, 2000), aff'd by, 254 F.3d 384 (2d Cir. 2001) (quoting Francis v. Runyon, 928 F. Supp. 195, 203 (E.D.N.Y. 1996)). Here, although Plaintiff points to multiple individuals, none are comparators because none are similarly situated to Plaintiff in all material respects. See ECF No. 60 at 8-9, 13-14.

Plaintiff's primary comparator, Officer Kmiecik, was not similarly situated to Plaintiff because Kmiecik was disciplined by officials in the New York field office, whereas Plaintiff was disciplined by Putnam who was in the Training Division. ECF No. 53 at ¶¶ 31-32. Further, unlike Plaintiff, Kmiecik had prior federal government experience and had been a New York City police officer. Id. at ¶ 30. Plaintiff had no prior federal government or law enforcement experience. Id.

The parties do not dispute that Kmiecik and Plaintiff were disciplined by different officials in different offices and that Kmiecik and Plaintiff had different prior professional

18

experience. ECF No. 62 at ¶¶ 30-32. These two differences undermine any argument that Kmiecik and Plaintiff are similarly situated. See Heiden v. New York City Health & Hosps. Corp., No. 20-CV-10288 (LJL), 2023 WL 171888, at *27 (S.D.N.Y. Jan. 11, 2023) (quoting Brown v. Waterbury Bd. of Educ., 247 F. Supp. 3d 196, 209 (D. Conn. 2017)) (noting that "[c]ourts have held that where employees are disciplined by different supervisors, they are not similarly situated"); Williams v. N. Y. State Unified Court Sys. Office of Court Admin., No. 16-CV-2061 (VSB), 2017 WL 4402562, at *11 (S.D.N.Y. Sept. 30, 2017) (granting motion to dismiss Title VII claim because plaintiff did not "allege that he was employed in the same department, subject to the same supervisors, or of a similar experience level as his comparators") (citations omitted); see also Baity v. Kralik, 51 F. Supp. 3d 414, 447 (S.D.N.Y. 2014) (explaining that the decisions of whether to promote plaintiff and his comparator being made by different people was "significant enough" to prevent a reasonable jury from finding plaintiff and his comparator "similarly situated so as to allow the drawing of an inference of discrimination"). Plaintiff therefore cannot point to Kmiecik's treatment as evidence of disparate treatment because the two are not similarly situated.[8]

---

[8] Defendant's Rule 56.1 statement states that Officer Kmiecik had graduated from training at the time he was arrested. ECF No. 53 at ¶ 28. Plaintiff disputes this statement because the cited evidence "indicate[s] that the comparator graduated from training but doe[s] [n]ot indicate whether it was before or after his arrest." ECF No. 62 at ¶ 28. Plaintiff is correct that the cited testimony in Defendant's Rule 56.1 statement indicates only that "Mr. Kmiecik graduated from the training academy"; it does not specify when he graduated. See ECF No. 57-14 at 81. With her reply brief, Defendant submitted a copy of Kmiecik's "Performance and Learning Management System student transcript." See ECF No. 66 at ¶ 2; ECF No. 66-1. But the transcript is hearsay. See Forte v. Liquidnet Holdings, Inc., No. 14-CV-2185 (AT), 2015 WL 5820976, at *4 (S.D.N.Y. Sept. 30, 2015), aff'd by, 675 F. App'x 21 (2d Cir. 2017) ("On a motion for summary judgment, the Court may consider only admissible evidence."). And Defendant did not lay a proper foundation for the business record exception; the declaration to which the document was appended is from Defendant's counsel. Cf. OneWest Bank, N.A. v. Guerrero, No. 14-CV-3754 (NSR), 2018 WL 2727891, at *5 (S.D.N.Y. June 6, 2018) (quoting United States v. Komasa, 767 F.3d 151, 156 (2d Cir. 2014)) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was 'kept

19

Beyond Kmiecik, Plaintiff asserts that "another male probationary employee was allowed to complete his training, despite being arrested for driving under the influence." ECF No. 60 at 9. In her deposition, Plaintiff described an officer named "Mark," who she learned of "after this case commenced." ECF No. 57-14 at 83. Plaintiff testified that Mark "had a DUI and they allowed him—they released him from training, allowed him to go back to the field office which [she] believe[s] . . . was in Miami," and added that "a year later they sent [Mark] back for training to complete his courses." Id. at 84. Plaintiff testified that she learned about Mark "from another officer." Id. Plaintiff, however, cannot even say for certain that "Mark" was allowed to return to training and the little information she has about "Mark" is hearsay at best. "A party resisting a motion for summary judgment must present admissible evidence in opposition to the motion." Medina v. N.Y.C. Dep't of Parks & Recreation, No. 01-CV-7847 (DKC), 2002 WL 31812681 at *5 (S.D.N.Y. Dec. 12, 2002) ("[Plaintiff's] own deposition testimony that a woman in the payroll department named Denise told her that African Americans are paid less than 'their positions require' . . . is inadmissible hearsay."). In any case, even if Mark did have a DUI and was allowed to return to training, Plaintiff herself indicates that Mark worked in the Miami field office, and thus would not be similarly situated to Plaintiff, who was assigned to the New York field office and was disciplined by the Training Division. See ECF No. 62 at ¶¶ 20, 32.

As a final male comparator, Plaintiff states that another "male probationary employee was terminated from training due to a DUI arrest in April 201[7],[9] but returned to his official

---

in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'") (alteration in original). The Court has therefore not considered the transcript in evaluating whether Kmiecik is similarly situated.

[9] Plaintiff states that this DUI was in 2019 but cites to a document referencing an arrest that took place on April 22, 2017. See ECF No. 61-2 at 2; see also ECF No. 60 at 13-14 (stating that "at least one of her male comparators was terminated from training due to a DUI arrest in April *2017*, but returned to his official duty station, not terminated") (emphasis added).

duty station, not terminated." ECF No. 60 at 9. Plaintiff points to a letter terminating a deportation officer trainee from training because he was arrested for driving under the influence. See ECF No. 61-2 at 2. But despite Plaintiff's conclusory allegation that this individual "returned to his official duty station, not terminated" (see ECF No. 60 at 9), Plaintiff provides no evidence of the individual's return to work; Plaintiff only provides evidence of his termination. Plaintiff also provides no information regarding who made the relevant employment decision as to this male comparator. And Plaintiff fails to provide any information about the office the individual was assigned to, his prior work experience, or his qualifications. Further, the letter Plaintiff relies on bolsters the conclusion that this employee was not similarly situated to Plaintiff, because he was attending the ICE Deportation Spanish Program, whereas Plaintiff was in an entirely different training program, the ICE Basic Immigration Enforcement Training Program. Compare ECF No. 61-2 at 2 ("This is to advise you that your attendance in the ICE Deportation Spanish Program (ICE_DSP-710) is being terminated[.]") with ECF No. 57-10 at 2 ("This is to advise you that your attendance in the ICE Basic Immigration Enforcement Training Program BIETP-1905 is being terminated[.]"). Consequently, this individual, too, is not an appropriate comparator to Plaintiff.[10]

---

[10] During her deposition, Plaintiff also listed another officer, whose name she did not know, who "drove his vehicle into a tree while he was on duty within the training center, and I'm not too sure what happened or what came of it." ECF No. 57-14 at 84-85. By Plaintiff's own admission, she is not aware of what happened to this individual following the misconduct. Plaintiff does not know whether the officer was arrested or whether his employment was terminated. Id. And it is not clear to the Court whether this individual is the comparator who was terminated from training due to a DUI arrest in April 2017. See ECF No. 60 at 13-14. In short, Plaintiff has not provided enough information about this nameless comparator to show that he was similarly situated to Plaintiff.

Importantly, neither party points to admissible evidence establishing Kmiecik's race[11] and nor does Plaintiff identify the race of "Mark" or the male probationary employee who was terminated from training due to a DUI arrest in April 2017, despite bringing a claim for race discrimination. See ECF No. 19 at ¶¶ 19-20. As a result, even if these comparators were similarly situated to Plaintiff, she could not point to them as evidence of race discrimination. See Jock v. Ransom, No. 05-CV-1108 (TJM), 2007 WL 1879717, at *4 (N.D.N.Y. June 28, 2007), aff'd by, 2009 WL 742193 (2d Cir. Mar. 20, 2009) (quoting Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005)) ("[W]here a plaintiff claims, for example, *racial discrimination* in employment, the plaintiff may present evidence of the treatment of employees *of other races* as a basis for the trier of fact to infer that the different treatment meted out to the plaintiff was based on race.") (emphasis in original); Goldman v. Admin. for Children's Servs., No. 04-CV-7890 (GEL), 2007 WL 1552397, at *7 (S.D.N.Y. May 29, 2007) (explaining that "sweeping allegations, in which plaintiff cannot even identify, and presents no evidence of, the race . . . of alleged comparators, [could] not satisfy the similarly situated test" for her race discrimination claim) (internal quotation marks and citation omitted).

Additionally, Plaintiff points to April Pope ("Pope"), a Black woman, as a pseudo comparator and "as evidence that black females have been subjected to disparate discipline." ECF No. 60 at 9; see also ECF No. 57-14 at 81-82. Plaintiff asserts that "Pope also being terminated establishes a clear factual question as to whether [B]lack female employees are subjected to higher standard[s] and more severe discipline than male coworkers." ECF No. 60 at

---

[11] Defendant's Rule 56.1 Statement states that Kmiecik is "white" but cites only to the second amended complaint as evidence. ECF No. 53 at ¶ 27. Defendant's opening brief also describes Kmiecik as white but similarly cites only to the second amended complaint. ECF No. 54 at 6, 10, 16. "It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment." Caro Cap., LLC v. Koch, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023).

14. But Plaintiff fails to demonstrate that she and Pope were treated similarly. Pope "was terminated after an incident, even though she completed her academy training," and Pope also had prior federal service. Id. at 9. Plaintiff, by contrast, was terminated before completing her training and had no prior federal service. See id. Plaintiff also does not state whether the incident involving Pope resulted in Pope's arrest. Nor do we know who was responsible for the decision to terminate Pope. Cf. Maiorino v. New York City Dep't of Sanitation, No. 25-CV-97 (LJL), 2025 WL 2928902, at *8 (S.D.N.Y. Oct. 15, 2025) ("If, for example, a particular defendant exhibits racial, gender or religious hostility to one member of a protected group, an inference may arise that it has treated other members of that same group with the same hostility.").

As her final evidence of pretext, Plaintiff contends that Defendant failed to follow its own policies and procedures. ECF No. 60 at 14. But Plaintiff cites to no evidence to show that Defendant failed to follow its own policies. Quite the contrary, given the policies Plaintiff acknowledged receiving and based on the arrest she does not dispute occurred, Defendant adhered to its policy of removing an individual from training for misconduct, and terminating employment where the individual did not complete the required training program. See, e.g., ECF No. 57-5 at 2 ("I understand that I must successfully complete all aspects of [Enforcement and Removal Operations Basic Immigration Enforcement Training Program] as a condition of my employment."); ECF No. 57-6 at § 4.2 (student handbook listing "ANY arrest on or off the [Federal Law Enforcement Training Center] campus" as an example of misconduct) (capitalization in original); ECF No. 57-7 at 2 ("A student who fails to complete an [Enforcement and Removal Operations] Basic Training Program due to misconduct or performance reasons will be removed from the training program.").

"It is well settled that courts in discrimination cases should not serve as super-personnel departments, reviewing employer disciplinary decisions." Bourara v. New York Hotel Trades Council & Hotel Ass'n of New York City, Inc. Emp. Benefit Funds, No. 17-CV-7895 (DF), 2020 WL 5209779, at *12 (S.D.N.Y. Sept. 1, 2020), aff'd by, No. 20-3092, 2021 WL 4851384 (2d Cir. Oct. 19, 2021) (internal quotation marks and citation omitted). Consequently, when a violation of company policy is proffered as the reason for termination, "the question in [ ] determining whether the plaintiff has adduced evidence of pretext is not whether the plaintiff in fact violated company policy, but whether . . . she has adduced evidence sufficient for a reasonable juror to find that, in terminating the plaintiff, the defendant 'did not genuinely believe' that the plaintiff had violated policy." Id. (quoting Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 453 (S.D.N.Y. 2013), aff'd sub nom. by, Dabney v. Bed Bath & Beyond, 588 F. App'x 15 (2d Cir. 2014)). Here, for the reasons discussed, Plaintiff has failed to adduce any such evidence. See Saenger v. Montefiore Med. Ctr., 706 F. Supp. 2d 494, 509 (S.D.N.Y. 2010) (quoting Gambello v. Time Warner Commc'ns, Inc., 186 F. Supp. 2d 209, 224 (E.D.N.Y. 2002)) ("Plaintiff's fundamental disagreement with the conclusions his supervisors drew from incidents which he admits occurred . . . is not evidence that his supervisors' appraisals were a sham, invented to mask discrimination") (alteration in original).

In sum, Plaintiff has "done little more than cite to [her alleged] mistreatment and ask the court to conclude that it must have been related to [her gender and race]. This is not sufficient." See Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001) (citing Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir.), cert. denied by, 525 U.S. 1001 (1998)). Because no reasonable jury could conclude that the evidence provided by Plaintiff suffices to show that Defendant terminated her on the basis of her gender or race, Defendant is entitled to summary judgment on

24

Plaintiff's Title VII claims. <u>See</u> <u>Casseus v. Verizon N.Y., Inc.</u>, 722 F. Supp. 2d 326, 345

(E.D.N.Y. 2010).

**CONCLUSION**

For the reasons set forth above, summary judgment is **GRANTED** for Defendant as to

both of Plaintiff's claims. The Clerk of Court is respectfully directed to terminate the motion at

ECF No. 52 and close the case.

**SO ORDERED.**

DATED:        New York, New York
              March 30, 2026

                                 _____

                                 VALERIE FIGUEREDO
                                 United States Magistrate Judge